McMASTER, Appellant,

v.

AKRON HEALTH DEPARTMENT, HOUSING DIVISION, Appellee.

[Cite as McMaster v. Akron Health Dept., Hous. Div., 189 Ohio App.3d 222, 2010-Ohio-3851.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 25054.

Decided Aug. 18, 2010.

James K. Reed, for appellant.

Cheri B. Cunningham, Akron Law Director, and John R. York and Sean W. Vollman, Assistant Law Directors, for appellee.

WHITMORE, Judge.

{¶ 1} Plaintiff-appellant, Keith McMaster, appeals from the judgment of the Summit County Court of Common Pleas, affirming the decision of the city of Akron Housing Appeals Board. This court affirms.

I

{¶ 2} McMaster has resided at 658 Orlando Avenue in Akron, Ohio since 1974. When his mother died in 1999, he inherited the property, subject to a mortgage. The Akron Health Department Housing Division had been to McMaster's property for exterior inspections of his residence on several occasions between March 2000 and August 2006. Until August 2006, however, McMaster had not permitted the housing division to enter his residence to perform an interior inspection. On August 9, 2006, the housing division obtained a search warrant in order to perform an interior inspection. As a result of that inspection, on August 11, 2006, the housing division issued McMaster an order citing him with 33 violations of Akron's Environmental Health Housing Code based on the interior and exterior condition of his residence. The citation reflected that repairs needed to be made to the roof, chimney, eaves, siding, gutters, and exterior stairs, in addition to interior repairs to the hot-water tank, wiring, windows, doors, plumbing, floors, furnace, and household cabinets. The order required McMaster to remove all garbage from the property and have the property exterminated due to rodent infestation, as well as to provide heat to all rooms in the house and make all doors

and windows weather tight. The condemnation order mandated compliance by no later than September 29, 2006, and required McMaster to vacate the property until it was re-inspected after he made the requisite repairs.

{¶ 3} McMaster appealed the condemnation order, and the housing appeals board held a hearing on September 19, 2006, at which time it denied his appeal. McMaster filed an administrative appeal to the Summit County Court of Common Pleas, and it affirmed the decision of the housing appeals board. McMaster appealed that decision to this court, and in February 2008, we affirmed the trial court's judgment.

{¶ 4} On April 3, 2008, the housing appeals board issued McMaster and others with an interest in the property notice that an administrative hearing would be held regarding demolition of the property. A hearing was held on April 15, 2008, at which the housing appeals board determined that the house was to be demolished, and the costs of demolition were to be assessed as a tax lien against the property. McMaster was present with counsel at the hearing. Following the hearing, McMaster received written notice of the housing appeal board's decision in a letter dated April 16, 2008, the day after the demolition hearing.

{¶ 5} On May 15, 2008, McMaster filed an administrative appeal pursuant to R.C. 2506 et seq. McMaster argued that while the housing appeals board had adhered to the notice provisions for demolition as established in Akron Codified Ordinances ("A.C.O.") 150.051, it had failed to simultaneously abide by the supplemental provisions for demolitions as set forth in A.C.O. 150.031.

{¶ 6} On March 3, 2009, a magistrate held a hearing on the matter. The magistrate denied McMaster's administrative appeal, concluding that the housing division was required to provide McMaster only with notice of the demolition as required by A.C.O. 150.051, with which the housing division had been fully compliant. The magistrate concluded that the provisions established in A.C.O. 150.031 were inapplicable to the case at bar. McMaster objected to the magistrate's decision, and the trial court denied McMaster's objections and adopted the decision of the magistrate. McMaster timely appealed to this court, but we dismissed his case for lack of a final, appealable order. *McMaster v. Akron Health Dept. Hous. Div.* (Sept. 1, 2009), 9th Dist. No. 24930. On September 24, 2009, the trial court issued another order in which it explicitly ruled upon each of McMaster's objections. McMaster now appeals from this order, asserting two assignments of error for our review.

## II

### Assignment of Error Number One

The City of Akron Housing Division violated Mr. McMaster's consitutional (sic) due process rights when it failed to issue a mandatory "notice of violation

requiring demolition" in accordance with Section 150.031 of the City of Akron Environmental Health Housing Code.

{¶ 7} In his first assignment of error, McMaster alleges that his due process rights were violated based on the Akron Health Department's failure to abide by the notice provisions established in A.C.O. 150.031. Specifically, McMaster argues that based on the lack of compliance with A.C.O. 150.031, he was denied the opportunity to prepare a meaningful defense or to be heard with respect to the alleged violations because he did not receive a copy of the violations and was not informed of what remedial action was required on his part. We disagree.

{¶ 8} Administrative appeals initiated under R.C. 2506.04 require the trial court to "consider[ ] the entire record before it and 'determine[ ] whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence.'" *Summit Cty. v. Stoll,* 9th Dist. No. 23465, 2007-Ohio-2887, 2007 WL 1695118, at ¶ 9, quoting *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433. Based on its review, the trial court may "affirm, reverse, vacate, or modify the order." R.C. 2506.04. The trial court's judgment "may be appealed by any party on questions of law." Id. Whether the trial court abused its discretion is "[w]ithin the ambit of 'questions of law' for appellate court review." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848, fn. 4. The Supreme Court of Ohio has indicated that the review undertaken by an appellate court in such an instance, however, "does not include the same extensive power to weigh 'the preponderance of substantial, reliable, and probative evidence,' as is granted to the common pleas court." *Henley,* 90 Ohio St.3d at 147, 735 N.E.2d 433; *Kisil,* 12 Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848, fn. 4. Rather, we must affirm the trial court's decision if such evidence exists in the record. *Summit Cty. v. Stoll,* 9th Dist. No. 24681, 2009-Ohio-6615, 2009 WL 4829999, at ¶ 6, citing *Kisil,* 12 Ohio St.3d at 34, 12 OBR 26, 465 N.E.2d 848. Accordingly, "[a]ppellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Henley,* 90 Ohio St.3d at 147, 735 N.E.2d 433.

{¶ 9} "Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest." *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 459, 668 N.E.2d 457, citing *Greene v. Lindsey* (1982), 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249. "[M]ost cases involving claims of due process deprivations * * * require a showing of identifiable prejudice to the [complaining party]." *Estes v. Texas* (1965), 381 U.S. 532, 542, 85 S.Ct. 1628, 14 L.Ed.2d 543.

{¶ 10} In his pleadings before the trial court and in his brief before this court, McMaster acknowledges that he received notice of the demolition hearing from the housing appeals board in compliance with A.C.O. 150.051, but argues that he never received any notice from the housing inspector as required by A.C.O. 150.031 or a copy of the violations that served as the basis for razing his property. The housing division argues that the two provisions are separate and distinct, that it was acting under the authority of A.C.O. 150.051 alone, and that it need not comply with the mandates of A.C.O. 150.031.

{¶ 11} A.C.O. 150.051(A), entitled "Repair, vacation and demolition—Procedure—Remedy of City for noncompliance," reads as follows:

On receipt of a report of the Housing Inspector that a premises is in violation of [A.C.O. 150, et seq.], the [Housing Appeals Board] shall:

1. Give written notice to the owner and all other persons having an interest in the premises, as shown by the land records of the Summit County Recorder's Office, to appear before the Board on the date specified in the notice;

2. Hold a hearing and hear testimony of the Housing Inspector, citizens or the owner of the dwelling or premises and all other persons having an interest in the premises, as shown by the land records of the Summit County Recorder's office, offer relative to the fitness of the building for human habitation or use;

3. Make written findings of fact from the testimony offered as to whether the dwelling or premises is unfit for human habitation or use; and

4. Issue an order based upon the findings of fact made, commanding, if proper, that the dwelling or premises in violation must be demolished within thirty days. This order shall be served on all persons specified in subsection 1 of this section. The order shall state that the dwelling or premises will be demolished by the city, and that there is a right to appeal the Board's order pursuant to Revised Code Chapter 2506.

Subsections (B) and (C) address granting extensions for compliance and the consequences of noncompliance, respectively.

{¶ 12} A.C.O. 150.031, captioned "Notice of violation requiring demolition," requires:

Whenever the Housing Inspector determines that the violations of [A.C.O. 150, et seq.] are so extensive that the city will demolish or repair the dwelling and premises due to the dwelling or premises being insecure, unsafe, or structurally defective, the notice and order shall:

A. Be written on an appropriate form as the Department of Public Service shall determine;

B. Include a list of violations, refer to the sections and subsections violated, and order remedial action which will affect compliance with the provisions of this chapter;

C. Specify a reasonable time within which to comply;

D. Be served upon all persons listed in the Summit County Recorder's Office and the Summit County Clerk of Courts having an interest or holding a lien on the dwelling or premises; and

E. Contain notice that the city intends to demolish or repair the dwelling and premises and assess costs to the owners of record, and that persons notified under this section may request a hearing before the Housing Appeals Board pursuant to § 150.05(A) of this chapter.

The plain language of A.C.O. 150.031 indicates that it is invoked only when a housing inspector independently determines, without any involvement of the housing appeals board and without a prior condemnation hearing, that the housing-code violations are so widespread that demolition is required. A.C.O. 150.031 is not implicated in situations such as McMaster's, where a housing inspector first reports the violations of a dwelling to the housing appeals board, which then holds a hearing to consider condemning the property, and based on the findings of fact established at that hearing, determines whether demolition is proper. The provisions are distinctly different in terms of the control they accord a housing inspector based on the extensiveness of the housing-code violations, as well as the due process they afford to the property owner once the violations are documented.

{¶ 13} Our review of the ordinances at issue does not reveal any support for McMaster's assertion that the housing division must abide by the terms of both demolition notice provisions, nor does McMaster provide this court with any authority, persuasive or otherwise. Based on the language in the ordinances, we find it evident that the provisions permit a housing inspector to pursue different remedies in distinctly different situations and provide for different procedural approaches to pursue demolition based on those different situations. They are not interrelated.

{¶ 14} To the extent that McMaster claims that he was unaware of the specific violations and remedial work to be done on his property and was therefore unable to adequately defend himself at the demolition hearing, the record reveals otherwise. The history of this case reveals that McMaster's property has been the subject of concern by the housing division since 2000, culminating in the August 2006 order citing multiple and extensive violations existing on the property. When McMaster appealed his condemnation order in 2007, this court affirmed the Housing Division's decision to condemn the home. *McMaster v. Akron Hous. Appeals Bd.,* 9th Dist. No. 23734, 2008-Ohio-661, 2008

WL 441629, at ¶ 14–17. Following our decision, the housing division sought to pursue demolition of McMaster's home based on its repeated inspections of the property and his ongoing failure to remedy any of the violations cited in the housing division's August 2006 condemnation order.

{¶ 15} In the housing appeals board's April 3, 2008 letter to McMaster, which was sent to him via regular mail and certified mail and was posted at his property, McMaster was specifically directed to appear at the demolition hearing to "describe how [he would] bring the property into compliance." Moreover, the letter directed McMaster to contact the sanitarian supervisor to arrange for a reinspection of his home before the hearing. McMaster admitted that he did not contact anyone from the housing division at any point before the hearing to question what he needed to do in order to remedy the 33 violations listed in the housing division's August 2006 condemnation order, nor did he request a reinspection of his home to document what repairs he had made to the property. Instead, McMaster appeared at the demolition hearing with counsel and testified that he "did clean up the house a little bit" and picked up the "trash and limbs and stuff" that were in his yard. He testified that he had refrained from any other repairs listed in the condemnation order, given his health and financial condition at the time. The history of the interaction between McMaster and the housing division belies McMaster's claim that he was uninformed of the violations that remained and what remedial actions were necessary on his property. In similar circumstances, this court has adopted the position that "[i]t is the responsibility of the property owner to be cognizant of the property he owns" in the face of repeated inspections and numerous violations of the A.C.O. *Carter v. Akron Hous. Appeals Bd.*, 9th Dist. No. 22767, 2006-Ohio-392, 2006 WL 234722, at ¶ 19 (despite a failure of service of the hearing notice, there was no due process violation given the multiple inspections and numerous citations issued on the property). See also *Thrower v. Akron*, 9th Dist. No. 21153, 2003-Ohio-1307, 2003 WL 1240457, at ¶ 26 (even if appellant "may not have been personally served with the notice of violations or the condemnation award, he had actual notice of them and admitted that he received them," in satisfaction of his due process rights).

{¶ 16} Furthermore, we note that the provisions of A.C.O. 151.051 provide McMaster with an automatic right to a hearing and to appeal the decision under R.C. 2506, whereas A.C.O. 151.031 places the burden on the property owner to request a hearing and does not expressly provide for the right to appeal the housing appeal board's decision. In short, by acting under A.C.O. 151.051, the housing appeal board acted in a manner that affords McMaster greater due process in terms of more notice and an automatic opportunity to be heard with respect to the proposed demolition of his residence. Therefore, even if McMaster were able to demonstrate that the housing division was required, and failed, to

abide by the terms of A.C.O. 151.031, he cannot show that he was prejudiced by their failure to do so, as the provision that the housing appeals board acted under affords him more due process than the alternative provision he argues should apply.

{¶ 17} In light of the foregoing evidence, we conclude that the housing division did not violate McMaster's due process rights because he was afforded ample notice of the demolition hearing, had an opportunity to have a reinspection of his home to challenge the existing violations, and was present and testified at the demolition hearing. Accordingly, we conclude that the trial court did not abuse its discretion in affirming the decision of the housing appeals board because it appropriately elected to proceed under A.C.O. 151.051 based on the circumstances of McMaster's case. McMaster's first assignment of error is overruled.

### Assignment of Error Number Two

The trial court's order denying Mr. McMaster's administrative appeal and affirming the decision of the housing appeals board was contrary to law, against the manifest weight of the evidence and/or consituted (sic) an abuse of discretion.

{¶ 18} In his second assignment of error, McMaster argues that the trial court's decision was arbitrary, unreasonable, and unsupported by the preponderance of substantial, reliable, and probative evidence because (1) there was a lack of credible testimony that his residence was insecure, unsafe, or structurally defective to the point that it required demolition, (2) the housing division failed to reinspect the property before recommending demolition, (3) the housing division failed to grant McMaster a variance and/or an extension in order to make the requisite repairs, (4) the housing division failed to demonstrate under A.C.O. 150.15 that the property was damaged beyond 60 percent of its original value or structure, and (5) the housing appeals board failed to make mandatory findings of fact in accordance with A.C.O. 150.051(A)(3).

{¶ 19} To address McMaster's second assignment of error, we must examine his previous pleadings to determine whether this matter has been properly preserved for review on appeal. The record reveals that on March 11, 2009, the magistrate issued a decision denying McMaster's administrative appeal. On March 24, 2009, McMaster filed a praecipe for a transcript from the hearing, as well as a combined motion to set aside the magistrate's decision time-stamped March 11, 2009, motion for stay, and motion for leave to file a supplemental memorandum after receipt of the transcript. In the combined motion, McMaster (1) requested that his case be transferred to a different common pleas judge, (2) alleged that his due process rights were violated by the application of only A.C.O. 150.051, and (3) generally asserted, without pointing to any specific rationale, that

the magistrate's decision was "contrary to law; against the manifest weight of the evidence; and/or an abuse of discretion." McMaster also requested "leave to file a supplemental memorandum in support of [his] motion after receipt of the transcript." The housing division opposed the motion, arguing that the motion to set aside the magistrate's decision was untimely under Civ.R. 53(D)(2)(b) and that McMaster had failed to properly object to the magistrate's findings as required by Civ.R. 53(D)(3). In response, McMaster filed a motion requesting to amend the caption to his March 24, 2009 pleading to read "Objections to Magistrate's Decision Time–Stamped March 13, 2009." In that same motion, McMaster again requested leave for an extension to "file a supplemental memorandum in support of [his] objections" once he received the March 3, 2009 hearing transcript. The transcript of the March 3, 2009 hearing was filed on April 30, 2009; however, McMaster never filed any other pleading or memorandum with the trial court.

{¶ 20} On July 30, 2009, the trial court entered judgment in the matter, specifically noting that it would "give [McMaster] the benefit of the doubt and treat his filings as objections duly filed under Civ.R. 53(D)(3)(i)." In doing so, the trial court adopted the magistrate's findings and independently entered judgment denying McMaster's appeal. McMaster appealed from the trial court's judgment, but this court later dismissed his appeal for lack of a final, appealable order because the trial court had not specifically ruled on each of McMaster's objections. *McMaster v. Akron Health Dept. Hous. Div.*, 9th Dist. No. 24930. On September 24, 2009, the trial court issued another order specifically overruling the three objections that McMaster had articulated in his March 24, 2009 motion. As previously noted, McMaster's motion merely asserted in an unspecified and generalized manner that he disagreed with the magistrate's decision. The trial court's September 24, 2009 order overruling McMaster's objections indicated that McMaster "assert[ed] a blanket claim that the magistrate's decision was contrary to law, was against the manifest weight of the evidence, was an abuse of discretion, was arbitrary, capricious, or vague, and was not supported by the preponderance of substantial evidence." It is clear from the record that McMaster did not properly object to the magistrate's decision with any degree of specificity or particularity as required by the Civil Rules. See Civ.R. 53(D)(3)(b)(ii) ("An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection"). Moreover, Civ.R. 53(D)(3)(b)(iv) provides:

[A] party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

Based on the history recounted above, it is evident that McMaster has forfeited the right to assign as error on appeal all the matters asserted in his second assignment of error because he failed to properly object to the magistrate's decision on these grounds. See *Kiewel v. Kiewel*, 9th Dist. No. 09CA0075–M, 2010-Ohio-2945, 2010 WL 2560088, at ¶ 17 (the failure to object to a magistrate's decision under Civ.R. 53(D)(3)(b)(iv) constitutes a forfeiture of the matter on appeal). While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain-error analysis if a defendant fails to do so. See *State v. Hairston*, 9th Dist. No. 05CA008768, 2006-Ohio-4925, 2006 WL 2716833, at ¶ 11. Because McMaster forfeited this issue for appeal and has not raised a claim of plain error, his second assignment of error lacks merit. Accordingly, McMaster's second assignment of error is overruled.

### III

{¶ 21} McMaster's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

CARR, J., concurs.

DICKINSON, P.J., concurs in judgment only.