[Cite as *Krill v. Krill*, 2014-Ohio-2577.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

TRENDA L. KRILL, NKA JEWELL,

    PLAINTIFF-APPELLANT,           CASE NO.  4-13-15

    v.

CLINT P. KRILL,                  O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Defiance County Common Pleas Court
Domestic Relations Division
Trial Court No. 06-DR-38057

**Judgment Affirmed**

Date of Decision:  June 16, 2014

APPEARANCES:

    *Timothy C. Holtsberry* **for Appellant**

    *James E. Hitchcock* **for Appellee**

**PRESTON, J.**

{¶1} Plaintiff-appellant, Trenda L. Krill, now known as Trenda L. Jewell ("Trenda"), appeals the October 7, 2013 and December 10, 2013 judgment entries of the Defiance County Court of Common Pleas naming defendant-appellee, Clint P. Krill ("Clint"), the residential parent and legal custodian of Trenda and Clint's three minor children and ordering that Trenda serve 22 days of a suspended jail sentence for contempt of court. For the reasons that follow, we affirm.

{¶2} Trenda filed her complaint for divorce on September 1, 2006. (Doc. No. 1). On October 2, 2007, the trial court filed the final judgment entry for divorce, which it supplemented with a judgment entry on November 1, 2007. (Doc. Nos. 27, 28). Under the settlement agreement, attached to and incorporated into the trial court's October 2, 2007 judgment entry, Trenda and Clint shared parenting. (Doc. No. 27).

{¶3} On February 7, 2008, Clint filed a motion for contempt, requesting that the trial court find Trenda in contempt for denying him parenting time. (Doc. No. 29).

{¶4} On July 3, 2008, the trial court filed a consent judgment entry, in which it found Trenda in contempt but allowed her to purge her contempt by allowing Clint to make up 13 days of parenting time. (Doc. No. 34).

{¶5} On November 2, 2009, Clint filed his "second motion to show cause," requesting that the trial court find Trenda in contempt for denying him parenting time. (Doc. No. 35).

{¶6} On December 18, 2009, the trial court filed a judgment entry finding Trenda in contempt "for her failure to abide by the prior orders of this Court" and ordering that she serve 30 days in jail, with 22 days of that suspended. (Doc. No. 43). The trial court also ordered makeup parenting time for Clint. (*Id.*). On December 24, 2009, Trenda filed a motion to modify or rescind her incarceration order, which the trial court found moot on January 6, 2010, after Trenda served her jail time. (Doc. Nos. 44, 45).

{¶7} On February 8, 2011, Clint, pro se, filed a motion for contempt, arguing that Trenda failed to pay his attorney fees and court costs as ordered by the trial court. (Doc. No. 46).

{¶8} On March 17, 2011, Trenda filed a motion for contempt and motion to modify child support, arguing that Clint failed to pay school expenses and other payments and that the parties' changed financial circumstances warranted a modification of the child-support order. (Doc. No. 48).

{¶9} On May 4, 2011, Clint filed an amended motion for contempt, followed by a second amended motion for contempt on May 27, 2011. (Doc. Nos. 49, 53). Each amended motion requested that the trial court, among other things,

find Trenda in contempt on a number of grounds and name Clint the residential parent and legal custodian of the parties' children. (*See id.*).

{¶10} On September 8, 2011, Clint filed a motion requesting that the trial court reduce his child-support obligation and grant him an extension of time to raise guardian ad litem ("GAL") fees. (Doc. No. 54).

{¶11} On September 16, 2011, the magistrate's decision and temporary orders were filed. (Doc. No. 55). The magistrate declined to find Clint in contempt, appointed a GAL, and modified Clint's child-support obligation. (*Id.*). The trial court approved the magistrate's decision and temporary orders. (Doc. No. 56).

{¶12} On October 13, 2011, Clint filed a motion for contempt, arguing that Trenda denied him visitation. (Doc. No. 57).

{¶13} On February 24, 2012, Clint filed a motion for contempt, arguing that Trenda claimed the parties' children on her tax return contrary to the trial court's order. (Doc. No. 58).

{¶14} On May 10, 2012, Clint filed a motion requesting, among other things, that the trial court find Trenda in contempt for denying him visitation. (Doc. No. 60).

{¶15} Following a hearing held on three days—August 24, October 12, and November 2, 2012—Trenda filed her memorandum in opposition to the

modification of child custody on November 21, 2012. (Doc. No. 71). On November 29, 2012, Clint filed his memorandum in support of the reallocation of parental rights and responsibilities. (Doc. No. 72). On December 5, 2012, Trenda filed her reply to Clint's memorandum. (Doc. No. 73). Clint filed a response to Trenda's reply on December 11, 2012. (Doc. No. 74).

{¶16} On April 8, 2013, the magistrate's decision was filed. (Doc. No. 76). The magistrate found that there was a change in the circumstances of the children and their parents, that Clint's requested custody modification would serve the children's best interests, and that any harm caused by the modification was outweighed by its advantages. (*Id.*). Based on those findings, the magistrate named Clint the residential parent and legal custodian of the parties' children and granted Trenda visitation every other weekend during the school year. (*Id.*). In addition, the magistrate found Trenda in contempt for violating the trial court's parenting orders and ordered that she serve the suspended jail sentence of 22 days. (*Id.*).

{¶17} On April 22, 2013, Trenda filed objections to the magistrate's decision. (Doc. No. 78). Trenda argued that there was no change of circumstances, that it was in the children's best interests to remain with Trenda, and that there was no "specific evidence" that the advantages of a custody modification would outweigh the harm. (*Id.*). Trenda did not object to the portion

of the magistrate's decision finding her in contempt and ordering that she serve her suspended jail sentence. (*See id.*). On May 1, 2013, Clint filed his response to Trenda's objections, arguing that the trial court should overrule Trenda's objections. (Doc. No. 79).

{¶18} On May 30, 2013, Trenda filed a motion for contempt, requesting that the trial court order Clint to show cause why he should not be held in contempt for disallowing Trenda holiday companionship time. (Doc. No. 82). On June 7, 2013, Clint moved to dismiss Trenda's motion for contempt. (Doc. No. 84).

{¶19} On July 18, 2013, Clint filed citations to "important testimony." (Doc. No. 89). On July 22, 2013, Trenda filed citations supporting her objections to the magistrate's decision. (Doc. No. 90).

{¶20} On October 7, 2013, the trial court overruled Trenda's objections to the magistrate's decision, concluding that the magistrate correctly determined that there was a change in circumstances, that naming Clint the residential parent and legal custodian would be in the children's best interests, and that the benefits of naming Clint the residential parent and legal custodian outweighed any potential harm. (Doc. No. 91).

{¶21} On December 10, 2013, the trial court filed its judgment entry, which, among other things, named Clint the residential parent and legal custodian,

granted Trenda visitation every other weekend during the school year, and ordered

that Trenda report to jail to serve her suspended 22-day sentence. (Doc. No. 93).

On December 18, 2013, the trial court filed a judgment entry nunc pro tunc

correctly identifying Trenda's counsel, who was misidentified in the December 10,

2013 judgment entry. (Doc. No. 94).

{¶22} Trenda filed her notice of appeal on December 30, 2013. (Doc. No.

95). She raises four assignments of error for our review. We will first address,

together, Trenda's second, third, and fourth assignments of error, followed by her

first assignment of error.

**Assignment of Error No. II**

**The trial court's finding that it was in the children's best interest to be placed with their father is contrary to the facts and the weight of evidence.**

**Assignment of Error No. III**

**The trail [sic] court did not make a finding that the best interest factors in R.C. 3109.04 weighed in the father's favor as required by that statute.**

**Assignment of Error No. IV**

**The trial court's finding that the benefit of placing the children with their father outweighed the harm is contrary to the facts and the weight of evidence.**

{¶23} In her second, third, and fourth assignments of error, Trenda

challenges the trial court's decision to name Clint the residential parent and legal

custodian of the parties' children. Specifically, Trenda argues in her second and fourth assignments of error that the facts and the weight of the evidence did not support the trial court's findings that placing the children with Clint was in their best interests and that the benefits of placing the children with Clint outweighed any harm. In her third assignment of error, Trenda argues that the trial court did not properly apply the best-interest factors found in R.C. 3109.04(F)(1).

{¶24} R.C. 3109.04(E)(1)(a) governs the trial court's authority to modify an existing decree allocating parental rights and responsibilities and provides, in relevant part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

*See Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 12.

**{¶25}** "'[W]hether there are changed circumstances is a threshold inquiry that must be determined prior to examining whether a change in parental responsibility would be in the best interests of the child.'" *Id.* at ¶ 13, quoting *Fox v. Fox*, 3d Dist. Hancock No. 5-03-42, 2004-Ohio-3344, ¶ 38. "Once the trial court has made the threshold finding that there has been a change in circumstances, the court must then make a finding as to the best interest of the child" after considering all relevant factors found in R.C. 3109.04(F)(1)(a)-(j). *Id.* at ¶ 29. Finally, the trial court must determine whether the harm that will result from the change of environment will be outweighed by the advantages that will result from the change. *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, ¶ 32, citing *Clark v. Smith*, 130 Ohio App.3d 648, 653 (3d Dist.1998).

**{¶26}** "Decisions concerning child custody matters rest within the sound discretion of the trial court." *Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-

15, 2011-Ohio-3008, ¶ 22 and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "'Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court.'" *Id.*, quoting *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody." *Id.*, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). "An abuse of discretion suggests the trial court's decision is unreasonable or unconscionable." *Meachem* at ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶27}** Here, Trenda does not contest the trial court's change-of-circumstances conclusion and its factual findings in support of that conclusion. Rather, Trenda's second, third, and fourth assignments of error address the trial court's factual findings and legal conclusions concerning whether a change in custody was in the children's best interests and whether the harm likely to be caused by a change of environment outweighed the advantages of the change.

**{¶28}** In determining the best interest of a child under R.C. 3109.04(E)(1)(a), a trial court must consider all relevant factors found in R.C. 3109.04(F)(1)'s nonexclusive set of factors:

    (a)   The wishes of the child's parents regarding the child's care;

(b)  If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c)  The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)  The child's adjustment to the child's home, school, and community;

(e)  The mental and physical health of all persons involved in the situation;

(f)  The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)  Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)  Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any

criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i)    Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)    Whether either parent has established a residence, or is planning to establish a residence, outside this state.

*See Rodriguez v. Rodriguez*, 3d Dist. Mercer No. 10-13-08, 2013-Ohio-4411, ¶ 15.

**{¶29}** The trial court "has discretion in determining which factors are relevant," and "each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court." *Brammer*, 2013-Ohio-2843, at ¶ 41, citing *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence. *Meachem*, 2011-Ohio-519, at ¶ 30, citing *Portentoso v. Portentoso*, 3d Dist. Seneca No. 13-07-03, 2007-Ohio-5770, ¶ 22. "[A]bsent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant 'best interest' factors listed in R.C. 3109.04(F)(1)." *Meachem* at ¶ 32, citing *Goodman v. Goodman*, 3d Dist. Marion No. 9-04-37, 2005-Ohio-1091, ¶ 18.

{¶30} In his April 8, 2013 decision, the magistrate specifically mentioned and analyzed the change-of-circumstances, best-interest, and harm-versus-advantages prerequisites required by R.C. 3109.04(E)(1)(a) to modify parental rights and responsibilities. (Doc. No. 76 at 17-19). He also stated that he considered "all of the evidence and the factors listed in [R.C.] 3109.04 (F)." (*Id.* at 19). Relevant to this appeal, the magistrate found, after a lengthy analysis, "that it is in the best interests of the children to designate [Clint] as their legal custodian and residential parent" and that "it is reasonable to find that the harm likely to be caused by a change in environment from their mother to their father is outweighed by the advantages of the change in environment to the children." (*Id.*).

{¶31} In its October 7, 2013 judgment entry overruling Trenda's objections to the magistrate's decision, the trial court found the magistrate's decision "to be factually and legally correct." (Doc. No. 91 at 5). The trial court agreed with the magistrate's best-interest finding, noting that Clint's potential parenting deficiencies "pale in comparison to the demonstrated lack of ability on the part of [Trenda] to act as residential parent" and that Trenda's "misconduct has been substantially detrimental to the children and, if she is allowed to continue in her capacity as residential parent will undoubtedly cause further harm to these children." (*Id.* at 3). Finally, the trial court noted that Trenda's "efforts to avoid parenting time, efforts to disrupt [Clint's] relationship with the children and her

-14-

on-going efforts to manipulate the children, clearly demonstrate that the benefit of a change of a residential status out-weigh any potential harm of such change." (*Id.* at 4).

{¶32} The trial court's October 7, 2013 judgment entry, and the April 8, 2013 magistrate's decision it upheld, are supported by a substantial amount of competent, credible evidence and are not against the weight of the evidence.

{¶33} We first address Trenda's argument that the trial court's best-interest and harm-versus-advantages findings were contrary to the weight of the evidence. We begin with the children's best interests. The trial court was not required to list and analyze one-by-one R.C. 3109.04(F)(1)'s best-interest factors. *Meachem*, 2011-Ohio-519, at ¶ 30. Rather, it was required only to consider the relevant factors. *Id.* It is clear from the record that the trial court considered the factors that it determined were relevant, and the magistrate's decision and trial court's judgment entry are supported by competent, credible evidence.

{¶34} The first best-interest factor is: "The wishes of the child's parents regarding the child's care." R.C. 3109.04(F)(1)(a). The magistrate noted that Clint felt that it was in the children's best interests that he be named the residential parent and legal custodian. (Doc. No. 76 at 2). Trenda felt that it would be in the children's best interests for the trial court to maintain the existing parenting arrangement. (*Id.*).

{¶35} The next best-interest factor involves "the wishes and concerns of the child, as expressed to the court" in an in-chambers interview. R.C. 3109.04(F)(1)(b). The magistrate noted that "[t]he court was not asked to interview the children." (Doc. No. 76 at 13). Absent a request by either party for the trial court to interview the children in chambers, the trial court was allowed, but not required, to do so. *See* R.C. 3109.04(B)(1); *In re Marriage of Munnings*, 11th Dist. Geauga No. 2005-G-2622, 2006-Ohio-3230, ¶ 18.

{¶36} At the time, the oldest child was nine years old, and the two youngest children, who are twins, were seven. (Nov. 2, 2012 Tr. at 59). The magistrate agreed with the GAL that the children "have been traumatized by the continuous investigations and questioning by the parents, law enforcement and children's services about matters which at their young age they do not likely comprehend." (Doc. No. 76 at 15). The trial court also noted the "significant impact" that the "constant barrage of accusations and investigations and questioning" had on the children. (Doc. No. 91 at 3-4). Therefore, given that the parties did not request interviews of the children, the children's ages, and the trauma the children have endured due to frequent interviews, the trial court appropriately applied its discretion in deciding not to interview the children in chambers and in deeming this factor irrelevant.

{¶37} The third R.C. 3109.04(F)(1) factor is: "The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest." R.C. 3109.04(F)(1)(c). The magistrate devoted many pages of his analysis to this factor, summarizing numerous incidents between the parties involving allegations of child abuse, domestic violence, and animal cruelty. (*See* Doc. No. 76 at 3-14). Most often, these incidents involved allegations of abuse leveled by Trenda against Clint. (*See id.*). As the magistrate noted, several investigation reports and sheriff's incident reports were admitted as exhibits at the hearing. (*See id.* at 2).

{¶38} The magistrate found that over a period of several years, "there were repeated findings" that Trenda's child-abuse and other claims against Clint were unsubstantiated, while she was dismissive of any child-abuse claims against her live-in boyfriend, Mark Armstrong ("Mark"). (*Id.* at 15). The magistrate stated, "A reasonable inference can be made that [Trenda's] actions were not so much to protect her children but were retaliatory in nature." (*Id.*). As the magistrate observed, several of the abuse allegations were filed shortly after Clint filed reports against Trenda or Mark, or after Clint filed a motion in court. (*Id.* at 11).

{¶39} The magistrate also stated, "A reasonable inference can be made that the children upon questioning on the subject matter told their mother things that were not true or exaggerated to please her and/or get her approval." (*Id.*). The

magistrate found that the evidence suggested that the children "had been 'coached' or conditioned to make these statements to get approval from their parent or other significant persons." (*Id.*). As we noted above, the magistrate cited the traumatic effect of "continuous" questioning and investigations. (*Id.* at 15). The magistrate observed that, because the children are now older, they "may even be more vulnerable to the stress created by the situation and since the divorce have had to undergo counseling." (*Id.* at 17).

{¶40} The record supports the magistrate's findings. Defiance County Deputy Sheriff Gina Waxler testified that she was involved in a total of 24 investigations—6 in 2007, 3 in 2008, 9 in 2009, 3 in 2010, and 3 in 2012—most of which Trenda initiated, concerning alleged child abuse by Clint. (Aug. 24, 2012 Tr. at 50-55). Waxler testified that this number of reports is abnormal and excessive for a resident of Defiance County. (*Id.* at 77). No charges were filed against Clint as the result of any of the 24 investigations. (*Id.* at 56). Waxler testified that in one instance, Trenda took the parties' daughter to the hospital for a rape examination, which came back negative, after the daughter's visitation with Clint. (*Id.* at 66); (Defendant's Ex. F). As the magistrate observed, that incident occurred on March 26, 2008—approximately six weeks after Clint filed the first of several motions for contempt against Trenda based on her denying him parenting time. (Doc. No. 76 at 5); (Defendant's Ex. F); (Doc. No. 29).

{¶41} In another incident, the Noble County, Indiana Department of Child Services investigated a March 18, 2010 report from a babysitter that the children told her that Clint sexually molested the parties' twins. (Defendant's Ex. F). After interviewing the children, the case manager and authorities concluded that the allegations were unsubstantiated and that "there was a pattern in the children's statements that may indicate that the children are being influenced by individuals." (*Id.*). The case manager also sent a letter to the trial court judge informing him that the parties' children suggested in their interviews that they had unsupervised contact with Mark, in contravention of the trial court's order. (Defendant's Ex. A).

{¶42} On March 30, 2010, the Noble County Department of Child Services received allegations that Mark was abusing one of the children by hitting and kicking her. (Defendant's Ex. W). When the case manager brought Trenda to the police department to join the interview of the parties' daughter, and the daughter told Trenda what she told the case manager during her interviews, Trenda

> began yelling at [the daughter] saying this is very important stuff and [the daughter] should not lie. [The daughter] began to cry and told her mother she was not lying, Mark does hit her and kick her. [Trenda] still did not believe [the daughter]. [The daughter] looked

at her mother and said "I did not mean Mark, I meant to say daddy

hits me."

(*Id.*). At that point, the case manager stopped Trenda and told her that the

daughter was telling the truth and that Trenda "needed to support her daughter and

not call her a liar." (*Id.*).

{¶43} On May 30, 2011, Trenda reported that Clint showered with and

kicked the parties' children. (Defendant's Ex. H). The children told the

responding officer that Clint kicked them and made them take a shower with him

every day they are with him. (*Id.*). In a follow-up interview less than two weeks

later, the children told the officer that Mark told them to make those allegations

against Clint. (*Id.*). They told the officer that they like being at Clint's house and

that he never showers with them or abuses them. (*Id.*).

{¶44} On September 28, 2011, two days after the trial court appointed the

GAL, Trenda went to the Defiance County Sheriff's Office and reported that one

of the children informed her that Clint slapped the child and attempted to hide the

resulting injury with makeup. (*Id.*). The officer who conducted initial interviews

of the children about the allegations expressed concerns over the variations in the

children's versions of the events. (*Id.*). Four days later, Trenda took the child to

the emergency room because she felt the child had a concussion. (*Id.*). The

investigating officer spoke with the doctor, who said that he did not see physical

evidence of any trauma but diagnosed a concussion based on the symptoms Trenda reported. (*Id.*). The officer told the doctor that the child stated that Clint struck both sides of her face at the same time, and the doctor stated that the child would not have suffered a concussion-causing injury in that case. (*Id.*). When the officer told Trenda about his conversation with the doctor, Trenda "was upset" and told the officer to speak with the child's school guidance counselor who "would confirm everything." (*Id.*). To the contrary, the guidance counselor "didn't feel there was any injury to the child," and she questioned Trenda's truthfulness. (*Id.*).

{¶45} None of those incidences—of March 26, 2008, March 18, 2010, March 30, 2010, May 30, 2011, or September 28, 2011—resulted in charges against Clint. (*See* Defendant's Exs. F, W, H).

{¶46} Dan Crites, a sergeant with the Defiance County Sheriff's Office, testified that he investigated a June 27, 2012 incident in which Clint's babysitter called Trenda, then called the Defiance County Sheriff's Office, to report that the children told her that Clint walks around naked in front of them, that he hit his girlfriend, and that he showers with the nine-year-old child. (Aug. 24, 2012 Tr. at 14); (Defendant's Ex. C). These allegations were made in the past, investigated, and deemed unfounded by authorities. (*Id.*); (*Id.*). Crites testified that Trenda went to the babysitter's house and attempted to take the children during Clint's visitation, but the children had already gone home with Clint. (*Id.*); (*Id.*).

{¶47} The GAL, Katrina Kight, testified that Clint's live-in girlfriend does not have any criminal record, but Mark has a history of substance abuse issues with methamphetamines. (Oct. 12, 2012 Tr. at 23). She testified that Mark has three children of his own and is prevented by court order from having unsupervised contact with them; however, he has an informal visitation arrangement with the children's mother. (*Id.* at 20-21). Mark testified that he has not taken methamphetamines since October 8, 2005, and he has been arrested one time for public intoxication in 2003. (Nov. 2, 2012 at 71-72).

{¶48} Kight testified that the children have been interviewed by social workers between 15 and 20 times regarding allegations of sexual and physical abuse, which has caused the children to experience trauma. (Oct. 12, 2012 Tr. at 19, 25). It was Kight's understanding that Trenda filed 29 complaints against Clint based on allegations of physical and sexual abuse and neglect, and none were substantiated. (*Id.* at 24).

{¶49} The magistrate observed that Clint denied that he committed the abusive acts alleged in any of the reports and gave plausible explanations. (Doc. No. 76 at 3-16); (*see* Defendant's Exs. F, W, H). The magistrate observed that on only one occasion—in which Trenda alleged that Clint was cruel to a cat in front of their children—were the allegations substantiated, and even then, the animal-cruelty charge filed against Clint was dismissed. (Oct. 12, 2012 Tr. at 37); (Aug.

24, 2012 Tr. at 31, 92). Trenda admitted during cross-examination that she made "several" allegations of abuse against Clint, but only the animal-cruelty incident led to a charge, which was dismissed. (Aug. 24, 2012 Tr. at 30-31). The magistrate questioned Trenda's credibility based on her accusing Clint of "numerous bad acts toward her as far back as 2001." (Doc. No. 76 at 11). The magistrate also noted that Mark testified that when the children return to him and Trenda at the police station following a visitation with Clint, Mark and Trenda typically ask the children before leaving the station "if there's anything [Mark and Trenda] need to know that happened" at Clint's. (Nov. 2, 2012 Tr. at 80-82). Mark and Trenda do not wait for the children to volunteer information about their time with Clint. (*Id.*).

{¶50} According to Kight, Trenda is "petrified that something is going to happen" when the children are with Clint, and she has not "dealt with in any substantial way her feelings of anxiety and what that means to the children, and how she's passing that anxiety on to the children." (Oct. 12, 2012 Tr. at 26). Other evidence in the record suggests Trenda and Mark told the children what to say to investigators or, at a minimum, affected what the children said to investigators through coaching or conditioning. (*See* Defendant's Exs. F, H, V, W); (Oct. 12, 2012 Tr. at 46-47). Kight believed that the children were not well suited for that environment, so she recommended that custody be transferred from

Trenda to Clint, on condition that Clint complete a parenting program and that the children receive therapy from a child psychologist. (Oct. 12, 2012 Tr. at 25).

{¶51} The fourth R.C. 3109.04(F)(1) factor is: "The child's adjustment to the child's home, school, and community." R.C. 3109.04(F)(1)(d). The magistrate examined the children's home, school, and community circumstances, and the record supports the magistrate's observations. He stated that there was some evidence of the children's performance in school, but not of their relationship with other students and teachers. (Doc. No. 76 at 16). The children do relatively well in school. (Nov. 2, 2012 Tr. at 73). The magistrate noted that the children would have to change schools if the trial court named Clint the residential parent and legal custodian. (Doc. No. 76 at 16). Trenda lives in Kendallville, Indiana. (Aug. 24, 2012 Tr. at 24). Clint lives in Sherwood, Ohio. (*Id.* at 86).

{¶52} The magistrate indicated that the children appear to have an "adequate relationship" with Mark and a "good relationship" with Clint's live-in girlfriend. (Doc. No. 76 at 16-17). The magistrate relied on Kight's testimony that there were no specific concerns regarding Trenda's and Clint's live-in significant others, and both homes appear to be adequate. (*Id.* at 16). Kight testified that she did not observe any indication of drug or alcohol abuse in either home, and there do not appear to be any relationship problems between Mark's

children and the Krill children.  (Oct. 12, 2012 Tr. at 21, 23).  The magistrate noted that the children "will continue to have adequate access to other family members in the area."  (Doc. No. 76 at 17).  Kight testified that Clint and Trenda take the children to see their extended family members.  (Oct. 12, 2012 Tr. at 22). Finally, the magistrate observed that evidence concerning the children's "neighborhood environment for both parents was generally lacking."  (Doc. No. 76 at 17).

{¶53} The fifth R.C. 3109.04(F)(1) factor is:  "The mental and physical health of all persons involved in the situation."  R.C. 3109.04(F)(1)(e).  The magistrate and trial court cited the trauma to which the children have been subjected under the current parenting arrangement.  The record reveals troubling ways in which this trauma has manifested itself.  For example, on cross-examination, Trenda expressed her belief that as long as Mark is protecting her, it is okay for him to provoke fights with Clint during exchanges of the children. (Nov. 2, 2012 Tr. at 37).  It is no wonder, then, as Trenda testified, that during these exchanges, the children run to Clint's car "[b]ecause they want to hurry up and get in his vehicle before anything happens."  (*Id.* at 36).  The oldest child "doesn't want anything started."  (*Id.* at 37).

{¶54} As noted above, Kight testified concerning her beliefs that the children have been traumatized by the frequent interviews by social workers and

authorities and that the children should receive therapy from a child psychologist trained in sexual-abuse cases. (Oct. 12, 2012 Tr. at 25-26). Following through with high-level, professional therapy, Kight said, "would be vital to the children's stability and emotional state." (*Id.* at 26). In addition, Kight recommended that Clint complete a parenting program, as noted above, and that Trenda receive counseling and also complete a parenting program. (*Id.* at 25-26).

{¶55} The sixth R.C. 3109.04(F)(1) factor is: "The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights." R.C. 3109.04(F)(1)(f). Related to our analysis of the sixth factor is the ninth factor, which is: "Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court." R.C. 3109.04(F)(1)(i). The magistrate found that Trenda "has shown indifference and lack of respect by basically ignoring the court orders" and "is much less likely than [Clint] to honor and facilitate" the trial court's parenting-time and other orders. (Doc. No. 76 at 17). The record supports the magistrate's findings.

{¶56} As the magistrate observed, Clint and his mother testified that Trenda has on numerous occasions denied him parenting time when he is planning to take the children to a family event. (Oct. 12, 2012 Tr. at 10-11, 59-60). Clint identified Defendant's Exhibit BB as Hicksville Police Department reports

documenting the instances when Trenda failed to exchange the children. (*Id.* at 50-51); (Defendant's Ex. BB). The magistrate also noted that Trenda admitted denying Clint parenting time on multiple occasions, including after she served eight days in jail for contempt, but she asserted that she denied him parenting time based on the abuse claims and advice from others, such as the Noble County Department of Child Services. (Aug. 24, 2012 Tr. at 32); (Nov. 2, 2012 Tr. at 33-35). Trenda admitted that she was sentenced to eight days in jail "because [she] stopped visitation on [her] own." (Nov. 2, 2012 Tr. at 33). In her brief, Trenda dismissively refers to these incidents as "hiccups with some of the visitations." (Appellant's Brief at 13).

{¶57} Finally, in its July 3, 2008 consent judgment entry, the trial court ordered that Trenda not allow unsupervised contact between the children and Mark. (Doc. No. 34). On the August 24, 2012 and November 2, 2012 hearing dates, Clint's counsel asked Trenda whether she allowed her children unsupervised contact with Mark. (Aug. 24, 2012 Tr. at 28); (Nov. 2, 2012 Tr. at 39). On August 24, Trenda responded, "No, I have not." (Aug. 24, 2012 Tr. at 28). However, on November 2, Trenda testified that she had allowed unsupervised contact between the children and Mark "[b]efore the divorce was finalized and all the rulings were in place." (Nov. 2, 2012 Tr. at 39).

{¶58} The seventh R.C. 3109.04(F)(1) factor is: "Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor." R.C. 3109.04(F)(1)(g). Clint testified that for a "month or two period" while he was receiving unemployment benefits, he fell behind in his child-support payments. (Aug. 24, 2012 Tr. at 114). However, Trenda testified that she received all of the child-support payments owed to her. (*Id.* at 36). The magistrate noted that the child-support issues were resolved in the magistrate's September 16, 2011 decision. (Doc. No. 76 at 21, citing Doc. No. 55).

{¶59} The eighth R.C. 3109.04(F)(1) factor "requires consideration of whether either parent has been convicted of or pleaded guilty to domestic violence or another criminal offense involving any act that resulted in the child being an abused or neglected child, 'and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or neglected child.'" *Scarberry v. Scarberry*, 2d Dist. Clark No. 10-CA-0091, 2011-Ohio-2829, ¶ 19, quoting R.C. 3109.04(F)(1)(h). The record suggests that neither parent and neither of the parents' current significant others has been convicted of, or pleaded guilty to, an offense encompassed by R.C. 3109.04(F)(1)(h). As the trial court noted, the Indiana charges against Clint for

animal cruelty were dismissed, and Kight observed no indication of drug or alcohol abuse in either home. (Aug. 24, 2012 Tr. at 31); (Oct. 12, 2012 Tr. at 23).

{¶60} The tenth R.C. 3109.04(F)(1) factor is: "Whether either parent has established a residence, or is planning to establish a residence, outside this state." R.C. 3109.04(F)(1)(g). As we noted above, and as the magistrate noted, Clint lives in Ohio, but Trenda has established an out-of-state residence in Kendallville, Indiana. (Doc. No. 76 at 4); (Aug. 24, 2012 Tr. at 24, 86).

{¶61} After summarizing the evidence presented at hearing, the magistrate noted that, while "[t]here are parenting concerns regarding both parties," Trenda has "regularly violated the court orders regarding parenting in that she has admittedly denied [Clint] parenting on numerous occasions and has disregarded the court order regarding unsupervised contact with Mark Armstrong." (Magistrate's Decision at 14-15). The magistrate also noted that Trenda continued to violate the trial court's orders after serving eight days in jail for contempt. (*Id.* at 15).

{¶62} The magistrate concluded that "[t]he current arrangement is harmful to the children and could cause difficulties for them now and in the future" and that "[l]eaving things the way they are does not appear to be appropriate nor [sic] in their best interests as it is almost assured that [Trenda] will continue her pattern of conduct." (*Id.* at 18). He also noted that maintaining the current arrangement

would continue to be traumatic for the children and continue to erode their relationship with Clint. (*Id.* at 18-19). The magistrate relied on the GAL's recommendation to modify the parenting rights and responsibilities and indicated that the children "would be less harmed by a change than by leaving the parenting situation as it is now." (*Id.* at 19). The trial court agreed with the magistrate. (Doc. No. 91).

{¶63} We hold that the trial court, by its October 7, 2013 judgment entry upholding the magistrate's decision, satisfied its statutory obligations to make the best-interest and harm-versus-advantages findings under R.C. 3109.04(E)(1)(a) and to consider the relevant factors found in R.C. 3109.04(F)(1). The trial court's findings are supported by a substantial amount of credible and competent evidence and are not against the manifest weight of the evidence. While the trial court clearly placed greater emphasis on certain R.C. 3109.04(F)(1) factors—namely the factors relating to the denial of parenting time and the parent most likely to honor parenting-time and visitation rights—it was allowed to do so. *Brammer*, 2013-Ohio-2843, at ¶ 41. Moreover, to the extent it did so, the trial court acted well within its discretion by affording greater weight to Clint's testimony over Trenda's. *Logan v. Holcomb*, 3d Dist. Marion No. 9-12-61, 2013-Ohio-2047, ¶ 39, citing *Sellers v. Sellers*, 4th Dist. Washington No. 09CA45, 2010-Ohio-3712, ¶ 17.

{¶64} Trenda argues in her third assignment of error that R.C. 3109.04 requires the trial court to "make a finding that the best interest factors in R.C. 3109.04 weighed in [Clint's] favor." (Appellant's Brief at 10). As we explained above, R.C. 3109.04(E)(1)(a) requires that before modifying a prior decree allocating parental rights and responsibilities, the trial court must find that a "modification is necessary to serve the best interest of the child." R.C. 3109.04(E)(1)(a). In making that determination, the trial court "shall consider all relevant factors" listed in R.C. 3109.04(F)(1). R.C. 3109.04(F)(1).

{¶65} Here, the trial court satisfied these statutory requirements—it concluded that a modification was necessary to serve the children's best interests after considering the relevant factors found in R.C. 3109.04(F)(1). There is no additional requirement that the trial court *find* that the R.C. 3109.04(F)(1) factors weigh in favor of one party or the other. The trial court is required only to "*consider* all relevant factors." (Emphasis added.) *Id.*

{¶66} Trenda also argues that the trial court is "tied to the ten best interest factors in 3109.04(F)(1) [sic] and nothing more, so it is an error to add its own factors." (Appellant's Brief at 14). This is contrary to the plain language of the statute. R.C. 3109.04(F)(1) states that "the court shall consider all relevant factors, including, *but not limited to*," those listed. (Emphasis added.) R.C. 3109.04(F)(1). In other words, "[a] trial court is not limited to the listed factors in

R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody." *Brammer*, 2013-Ohio-2843, at ¶ 41, citing *Shaffer v. Shaffer*, 3d Dist. Paulding No. 11-04-22, 2005-Ohio-3884, ¶ 20. Because the trial court was free to consider any relevant factors beyond those listed in R.C. 3109.04(F), we reject Trenda's argument.

{¶67} For the reasons above, we conclude that the trial court made the findings required by R.C. 3109.04 and that those findings are supported by a substantial amount of competent, credible evidence. Therefore, the trial court did not abuse its discretion by naming Clint the residential parent and legal custodian of the parties' children.

{¶68} Trenda's second, third, and fourth assignments of error are overruled.

**Assignment of Error No. I**

**The trial court's finding of contempt is contrary to the facts and the weight of evidence.**

{¶69} In her first assignment of error, Trenda argues that the trial court's finding of contempt for denial of visitation is not supported by any testimony in the record. Before addressing Trenda's first assignment of error, we must determine whether she preserved this assignment of error for appeal.

{¶70} Civ.R. 53(D)(3)(b) governs objections to a magistrate's decision. Specifically, Civ.R. 53(D)(3)(b)(iv) provides:

> Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).

When a party fails to object to a factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b) and assigns as error on appeal anything other than plain error, the appellate court need not address that assigned error. *McMaster v. Akron Health Dept., Housing Div.*, 189 Ohio App.3d 222, 2010-Ohio-3851, ¶ 20 (9th Dist.); *In re M.W.R.*, 12th Dist. Butler Nos. CA2007-04-105 and CA2007-04-106, 2007-Ohio-6169, ¶ 15-16. *See also McCombs v. Blackert*, 3d Dist. Crawford No. 3-11-03, 2011-Ohio-5079, ¶ 14 (applying the similarly worded Juv.R. 40(D)(3)(b)(iv) and declining to address appellant's assignment of error because appellant failed to argue plain error on appeal). "[T]his court will not sua sponte undertake a plain-error analysis if [an appellant] fails to do so." *McMaster* at ¶ 21.

{¶71} Here, Trenda did not object to the magistrate's contempt-related factual findings and legal conclusions, and the trial court noted as much in its October 7, 2013 judgment entry overruling her objections to the magistrate's decision. (*See* Doc. No. 91). Therefore, under Civ.R. 53(D)(3)(b)(iv), except for

a claim of plain error, Trenda cannot assign as error on appeal the trial court's adoption of the magistrate's contempt-related factual findings and legal conclusions. Trenda does not argue plain error on appeal. Rather, she assigns as error the trial court's contempt-related factual findings, and she erroneously suggests that we should review her first assignment of error under an abuse-of-discretion standard. Therefore, because Trenda fails to assign or argue plain error on appeal, we need not and do not address further her first assignment of error.

{¶72} Trenda's first assignment of error is overruled.

{¶73} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**