[Cite as *Cornwell v. Eufracio*, 2024-Ohio-4634.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

AUSTIN CORNWELL,

    PETITIONER-APPELLEE,

CASE NO. 13-24-17

v.

ADRIANA EUFRACIO,

O P I N I O N

    RESPONDENT-APPELLANT.

AUSTIN CORNWELL,

    PETITIONER-APPELLEE,

CASE NO. 13-24-18

v.

ADRIANA EUFRACIO,

O P I N I O N

    RESPONDENT-APPELLANT.

**Appeals from Seneca County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 22370136 and 22370137**

**Judgments Affirmed**

**Date of Decision:  September 23, 2024**

**APPEARANCES:**

    *John M. Kahler II* **for Appellant**

    *David C. Shook* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Respondent-appellant, Adrianna Eufracio ("Eufracio"), appeals the April 15, 2024 judgment entries of the Seneca County Court of Common Pleas, Juvenile Division, allocating parental rights and responsibilities and designating petitioner-appellee, Austin Cornwell ("Cornwell"), as the residential parent and legal custodian of the parties' minor children.  We affirm.

{¶2} Eufracio and Cornwell, who were never married, had two children during their relationship, Al.C. (born in 2017) and Am.C. (born in 2021).  On August 22, 2023, Cornwell filed petitions in the trial court to determine the parental rights and responsibilities of Al.C. and Am.C.[1]

{¶3} On October 5, 2023, the trial court's magistrate issued temporary orders naming Eufracio as Al.C. and Am.C.'s temporary residential parent.  Following Cornwell's request, the trial court's magistrate appointed a guardian ad litem ("GAL") on October 12, 2023.  The GAL filed his reports on January 11, 2024 in which he recommended ("with some reluctance") that Eufracio "be the residential parent and have custody of [Al.C.] and [Am.C.]"  (Doc. No. 31).  Importantly, the GAL expressed his reservation of Eufracio's removal of "the children from the State of Ohio without the consent of their father, Mr. Cornwell, and apparently without

---

[1] Even though Cornwell stated in his petition that he was seeking a shared-parenting order, Cornwell appears to have abandoned that request.

much discussion with him or family members who had developed a close bond with the children." (*Id.*).

**{¶4}** Prior to trial, Eufracio filed motions requesting that the trial court conduct an in camera interview of Al.C., which the trial court's magistrate granted. However, after the trial court's magistrate informed her that "another $500 towards the fee of the [GAL]" needed to be deposited for purposes of the in camera interview, Eufracio withdrew her motions. (Jan. 18, 2024 Tr. at 39, 127).

**{¶5}** Following a hearing on January 18, 2024, the trial court's magistrate issued decisions on January 24, 2024 awarding residential and legal custody of Al.C. and Am.C. to Cornwell. Eufracio filed her objections to the magistrate's decisions on February 5 and March 18, 2024. Cornwell filed memoranda in opposition to Eufracio's objections to the magistrate's decisions on April 4, 2024. On April 15, 2024, the trial court, in its independent review of the matter, overruled Eufracio's objections to the magistrate's decisions. (Doc. No. 47).

**{¶6}** Eufracio filed her notices of appeal on May 1, 2024 and we consolidated the cases for purposes of appeal. She raises two assignments of error for our review, which we will discuss together.

**First Assignment of Error**

**The Trial Court erred when he determined that it was in the children's best interest to designate Father the residential parent and legal custodian of the minor children.**

**Second Assignment of Error**

**The Trial Court erred by essentially threatening to charge a "fee" to conduct an in camera interview of the parties [sic] minor children and thus coercing Mother to withdraw her motion for an in camera interview.**

{¶7} In her assignments of error, Eufracio argues that the trial court abused its discretion by designating Cornwell as Al.C. and Am.C.'s residential parent and legal custodian. In particular, in her first assignment of error, Eufracio contends that the trial court did not properly consider the best-interest factors under R.C. 3109.04. Eufracio argues in her second assignment of error that the trial court's decision allocating the parties' parental rights and responsibilities is unreasonable, arbitrary, or unconscionable because the trial court's magistrate did not conduct an in camera interview of Al.C.

*Standard of Review*

{¶8} "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 2014-Ohio-2577, ¶ 26 (3d Dist.), quoting *Walker v. Walker*, 2013-Ohio-1496, ¶ 46 (3d Dist.). "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."'" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 2008-Ohio-5538, ¶ 25 (3d Dist.) and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial

court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶9} "Revised Code 3109.04 governs the trial court's award of parental rights and responsibilities." *August v. August*, 2014-Ohio-3986, ¶ 22 (3d Dist.). That statute "provides for options available to the trial court when allocating parental rights and responsibilities: 'primarily to one of the parents' (R.C. 3109.04(A)(1)), or 'to both parents' (R.C. 3109.04(A)(2))." *Id.* When considering the parental rights and responsibilities of unmarried parents, the statute directs that

> [a]n unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. A court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation.

R.C. 3109.042(A).

{¶10} "In custody disputes between unmarried parents, 'the court must determine custody based on the best interests of the child pursuant to R.C. 3109.04(B)(1).'" *In re Fair*, 2009-Ohio-683, ¶ 39 (11th Dist.), quoting *In re Knight*, 2003-Ohio-7222, ¶ 16 (11th Dist.). R.C. 3109.04(F)(1) "spell[s] out ten factors that

the court shall consider to determine the best interest of the child . . . ." *August* at ¶ 23.

> "In determining the best interest of a child [under R.C. 3109.04], whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation;
>
> (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
>
> (h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected

child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

*Id.*, quoting R.C. 3109.04(F)(1).

**{¶11}** "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Krill*, 2014-Ohio-2577, at ¶ 29 (3d Dist.), quoting *Brammer v. Brammer*, 2013-Ohio-2843, ¶ 41 (3d Dist.). "A trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody." *Brammer* at ¶ 41. "Although the trial court must consider all relevant factors, there

is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Krill* at ¶ 29. "[A]bsent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant 'best interest' factors listed in R.C. 3109.04(F)(1)." *Brammer v. Meachem*, 2011-Ohio-519, ¶ 32 (3d Dist.).

**{¶12}** "Additionally, we note that the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Walton v. Walton*, 2011-Ohio-2847, ¶ 20 (3d Dist.). "Therefore, '"[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."'" *Id.*, quoting *Clark v. Clark*, 2007-Ohio-5771, ¶ 23 (3d Dist.), quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984). Importantly, "[t]he best interest determination focuses on the child, not the parent." *B.S. v. M.M.*, 2021-Ohio-176, ¶ 29 (5th Dist.).

**{¶13}** In its January 24, 2024 decisions, the trial court's magistrate considered the factors under R.C. 3109.04 when reaching the conclusion that it is in Al.C. and Am.C.'s best interest for Cornwell to have residential and legal custody of Al.C. and Am.C. In concluding that designating Cornwell as Al.C. and Am.C.'s

residential parent and legal custodian is in their best interest, the trial court's magistrate found the following factors under R.C. 3109.04(F)(1): R.C. 3109.04(F)(1)(a), Cornwell sought "custody" and, even though she did not file any motion, the trial court's magistrate concluded that Eufracio "also desire[d] to be designated residential parent"; R.C. 3109.04(F)(1)(b), while no in camera interview was conducted (because Eufracio withdrew her request), the GAL expressed the wishes of the children; R.C. 3109.04(F)(1)(c), even though Eufracio "testified to being the primary caretaker," "[t]he children have a more stable and identified family support system in Ohio, and the credible evidence supports a conclusion that's [sic] it is superior to the support available in Texas"; R.C. 3109.04(F)(1)(d), "the children have the support of both maternal and paternal family members" in Ohio, "and that in Texas there is no comparative support system"; R.C. 3109.04(F)(1)(e), even though "no professional or expert testimony regarding any mental health issues, or physical health issues" was presented, the trial court's magistrate nevertheless found that because "both parents have issues with proper parenting," "the fact that there is a more extended support system in Ohio . . . is a strong factor in evaluating the children's best interest"; R.C. 3109.04(F)(1)(f), both parties will honor the orders of the court; R.C. 3109.04(F)(1)(g), there is no child-support order; R.C. 3109.04(F)(1)(h), neither party has been convicted of any crime related to child abuse or neglect; R.C. 3109.04(F)(1)(i), neither party deprived the

other parent's right to parenting time, and R.C. 3109.04(F)(1)(j), Eufracio "relocated to Texas, without consulting [Cornwell], and with no identifiable need to relocate the children, other that [sic] it was her 'dream to live in Texas.'" (Doc. No. 33).

{¶14} In its April 15, 2024 decisions overruling Eufracio's objections to the magistrate's decisions, the trial court (after an independent analysis of the factors under R.C. 3109.04) also concluded that it is in Al.C. and Am.C.'s best interest for Cornwell to have residential and legal custody of Al.C. and Am.C. Critically, the trial court was "not persuaded that the children are better served residing in Texas" because "the record reflects that the children have more family support in Ohio." (Doc. No. 47).

{¶15} Challenging the trial court's decisions relating to parental rights and responsibilities, Eufracio argues that the trial court abused its discretion by concluding that it is in Al.C. and Am.C.'s best interest for Cornwell to have residential and legal custody of Al.C. and Am.C. Eufracio asserts that the trial court's custody decision (based on the factors under R.C. 3109.04(F)) is not supported by a substantial amount of competent, credible evidence.

{¶16} Addressing the factors set forth under R.C. 3109.04(F)(1), Eufracio contends that the trial court's findings as to the following factors are not supported by a substantial amount of competent, credible evidence: R.C. 3109.04(F)(1)(b),

even though she "filed a motion for an in camera interview of" Al.C., the trial court's magistrate, "through undue influence convinced [Eufracio] to withdraw her motion for an in camera interview"; R.C. 3109.04(F)(1)(c), (d), the trial court did not properly weigh the evidence supporting Al.C. and Am.C.'s relationship with Eufracio and her extended family in Texas; R.C. 3109.04(F)(1)(f), (i), Eufracio "is more likely to honor and facilitate parenting time" because Cornwell "was not following the parenting time schedule that the parties had agreed upon"; and R.C. 3109.04(F)(1)(j), Eufracio's relocation to Texas "is a factor in [her] favor" because it "has been good for [her] and the children." (Appellant's Brief at 10-15).

{¶17} Further, Eufracio contends that the trial court's custody decision is not supported by a substantial amount of competent, credible evidence because it did not properly weigh the evidence that she "has been the primary caregiver for the children for most, if not all of their lives." (*Id.* at 18). In particular, Eufracio contends that "the Trial Court failed to acknowledge the 'primary caregiver doctrine.'" (*Id.* at 17). While "Ohio has never formally adopted the primary caregiver doctrine," "the doctrine is inherently a part of the best interest of the child and is included in the language of R.C. 3109.04(F)(1)(c), i.e. 'the child's interactions and interrelationship with the child's parents.'" *Lutton v. Briggs*, 2015-Ohio-1910, ¶ 31 (5th Dist.), quoting R.C. 3109.04(F)(1)(c). "'Thus, the primary caregiver doctrine is but one factor that a court should consider in order to determine

which parent should be the residential parent, but it should not give presumptive weight over other relevant factors.'" *Gould v. Gould*, 2017-Ohio-6896, ¶ 48 (4th Dist.), quoting *McCoy v. Sullivan*, 2016-Ohio-8276, ¶ 20 (4th Dist.).

**{¶18}** Based on our review of the record, we conclude that the trial court properly considered the best-interest factors challenged by Eufracio and conclude that the trial court's findings are supported by a substantial amount of competent, credible evidence. *See Brammer*, 2013-Ohio-2843, at ¶ 47 (3d Dist.) ("When reviewing a trial court's best interests analysis, we need only address two items: '(1) [whether] the trial court considered all of the necessary factors listed in R.C. 3109.04(F)(1); and (2) [whether] there is competent, credible evidence supporting the trial court's conclusion that it was in the children's best interest to designate [the other parent] as residential parent.'"), quoting *Heiser v. Heiser*, 2007-Ohio-5487, ¶ 27 (3d Dist.). Indeed, Eufracio essentially complains that the trial court abused its discretion by affording more weight and credibility to the evidence demonstrating that it is in Al.C. and Am.C.'s best interest for Cornwell to be their residential parent and legal custodian. In other words, Eufracio is asking this court to reconsider and reweigh the trial court's assessment of the evidence. Critically, "[i]t is not our position to substitute our judgment for that of the trial court." *Id.* at ¶ 46.

**{¶19}** Nevertheless, Eufracio argues under her second assignment of error that the trial court's decision designating Cornwell as the residential parent and legal

custodian of the parties' children is flawed because the trial court's magistrate did not conduct an in camera interview of Al.C. as she requested. Specifically, Eufracio contends that she was "coerced . . . into withdrawing her motion for an in camera interview" when the trial court's magistrate insisted that she pay "an additional $500 guardian ad litem deposit and pointing out that she would be responsible for any travel-related expenses in transporting the child from Texas to Ohio." (Appellant's Brief at 20). She contends that such deposit was not only "excessive" but that "[t]he GAL was not necessary for the court to conduct an in camera interview of the child." (*Id.*). We disagree.

{¶20} "Under R.C. 3109.04(B), a trial court may conduct an in camera interview of the children in the course of determining their best interests." *Phillips v. Phillips*, 2014-Ohio-248, ¶ 22 (9th Dist.). "If either parent requests an in camera interview, however, the trial court must grant the request." *Id.* Under R.C. 3109.04(B)(2)(a), "[i]f the court interviews any child . . . [t]he court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem for the child." *See also Moline v. Moline*, 2010-Ohio-1799, ¶ 89 (11th Dist.) (noting that, even though "R.C. 3109.04(B)(2)(c) does not expressly list the guardian ad litem as one of the persons allowed to be present during an in camera interview," "whether a guardian ad litem constitutes 'necessary court personnel' is a matter within the sound discretion of the trial court").

**{¶21}** In this case, Eufracio filed motions prior to the January 18, 2024 hearing in which she requested that the trial court conduct an in camera interview of Al.C., who was six years old at the time. However, after the trial court's magistrate mandated during the hearing that "another $500 towards the fee of the [GAL]" needed to be deposited for purposes of the in camera interview, Eufracio withdrew her motions. (Jan. 18, 2024 Tr. at 39, 127). In other words, Eufracio not only withdrew her request for the in camera interview but she did not object to the trial court's magistrate's instruction that she "deposit[] another $500 towards the fee of the [GAL]." (*Id.* at 39).

**{¶22}** "[T]he doctrine of forfeiture also applies" when a trial court does not conduct such requested in camera interview. *Phillips* at ¶ 23. Specifically, "a party forfeits all but plain error on appeal where a motion for in-camera interview is made and the trial court fails to take action upon it when the party did not raise the issue subsequently during the proceedings." *Id.* at ¶ 32 (Belfance, J., dissenting). Consequently, Eufracio waived all but plain error on appeal. "Plain error is not favored and is only applicable in rare cases where the error 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Collier v. Smith*, 2023-Ohio-1553, ¶ 10 (1st Dist.), quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

-14-

**{¶23}** Based on our review of the record, we conclude that this case does not present the exceptional circumstances which would warrant application of the plain-error doctrine. *See Comrie v. Comrie*, 2010-Ohio-3319, ¶ 12 (8th Dist.). Decisively, it was not plain error for the trial court's magistrate to request the additional deposit for the GAL's fees in order to proceed with the in camera interview of Al.C. under the circumstances of this case. *Compare King v. King*, 2014-Ohio-5837, ¶ 24 (4th Dist.) (analyzing that the trial court did not abuse its discretion by denying the request to appoint a GAL "due to its [sic] inability to assure payment it would not appoint a GAL"). *See also Jackson v. Herron*, 2005-Ohio-4039, ¶ 6 (11th Dist.) ("The Ohio Rules of Civil Procedure provide that, '[w]hen it is essential to protect the interests of a child, the court may . . . appoint a guardian ad litem . . . for the child and tax the costs.'"), quoting Civ.R. 75(B)(2).

**{¶24}** Moreover, Eufracio cannot demonstrate that the trial court's magistrate's failure to conduct an in camera interview of Al.C. prejudiced her case. *See In re K.J.D.*, 2013-Ohio-610, ¶ 54 (10th Dist.). Indeed, notwithstanding the discretion that the trial court has to apply "greater weight to any one of the best-interest factors deepening on the facts of the case," Eufracio did not present any argument as to how such in camera interview with Al.C. would have changed the outcome of the case. *Costilla v. Weimerskirch*, 2021-Ohio-165, ¶ 32 (3d Dist.). Importantly, the trial court's magistrate found that the GAL expressed the wishes of

the children. Further, the GAL ultimately recommended that the trial court designate Eufracio as the residential parent and legal custodian of Al.C. and Am.C. Indeed, the GAL testified at the January 18, 2024 that he spoke with Al.C., who "seemed like she liked Texas . . . ." (Jan. 18, 2024 Tr. at 26). *Compare Gibson v. Gibson*, 2018-Ohio-2772, ¶ 46 (7th Dist.) (suggesting that a 6-year-old is "'too young to interrogate'" about their wishes). For these reasons, we conclude that it was not plain error for the trial court's magistrate not to proceed with an in camera interview without the additional deposit for the GAL's fees under the facts presented.

{¶25} Therefore, we conclude that the trial court explicitly addressed its best-interest findings and those findings are supported by a substantial amount of competent, credible evidence. *See Krill*, 2014-Ohio-2577, at ¶ 29 (3d Dist.). Importantly, a substantial amount of competent, credible evidence was presented at the January 18, 2024 hearing, which supports the trial court's determination that it is in Al.C. and Am.C.'s best interest for Cornwell to be designated Al.C. and Am.C.'s residential parent and legal custodian. At the hearing, Cornwell presented the testimony of the GAL and his aunt, Rhonda Cornwell ("Rhonda"), as well as his own testimony. Other than her own testimony, Eufracio did not present *any* evidence.

**{¶26}** The overriding theme of the evidence presented at the hearing reflects the relationships that Al.C. and Am.C. have developed with Cornwell's and Eufracio's extended family in *Ohio*. In particular, the GAL testified that he investigated the case and resolved that "both these parents needed help with these two children from the extended family here in" Ohio. (Jan. 18, 2024 Tr. at 37). Critically, the GAL testified that "extended family members on both sides were also involved in raising" Al.C. and Am.C. (*Id.* at 25). The GAL testified that Al.C. and Am.C. have a substantial support system in Ohio and spent "significant time with both sides of the family." (*Id.* at 15). Likewise, the GAL testified that Al.C. and Am.C. have a strong bond with Eufracio and Cornwell as well as with Eufracio's and Cornwell's extended family in Ohio. Indeed, Rhonda testified that she and Cornwell's grandmother are licensed daycare providers in Ohio and that they provided daycare for Al.C. and Am.C. Rhonda further testified that, in addition to providing daycare, she was a part of Al.C. and Am.C.'s extended family that cared for the girls and that they "were always together on a daily basis, weekly basis, whether it was dinner, cooking out, grilling, going places." (*Id.* at 67).

**{¶27}** Cornwell testified that Eufracio did not inform him that she was moving to Texas. According to Cornwell, Eufracio told him "[t]hat she was taking a car there and was going to be back in a week." (*Id.* at 91). However, Cornwell learned from Rhonda that Eufracio did not plan to return to Ohio. Indeed, Rhonda

testified that, while she did not know that Eufracio planned to move to Texas, she learned about the move "[a]fter she was already gone" when Rhonda messaged Eufracio "asking her when she was going to be returning because [Al.C.'s school] orientation was that following Tuesday." (*Id.* at 73).

{¶28} Based on his investigation, the GAL testified that he determined that there was no "overriding" benefit for Eufracio to move the children to Texas. (*Id.* at 13). The GAL further testified that he did not find any evidence that any of Eufracio's family members living in Texas were involved in Al.C. or Am.C.'s lives prior to Eufracio's move to Texas. Importantly, the GAL was unable to speak with *any* of Eufracio's family members living in Texas, and Eufracio affirmed that she did not provide the names or contact information for anyone in Texas to the GAL.

{¶29} The GAL testified that, even though it "was a close decision" as to which party should be designated Al.C. and Am.C's residential parent and legal guardian, Eufracio "generally knew what the children's needs were better than Mr. Cornwell." (*Id.* at 24). The GAL testified that Al.C. expressed that she missed Cornwell following her move to Texas but that she was not "traumatized" by the move. (*Id.* at 26). The GAL further testified that he did not make a determination as to which parent would be more likely to facilitate court-approved parenting time rights or visitation and companionship rights. Eufracio testified that she would return to Ohio if the trial court designated Cornwell as Al.C. and Am.C.'s residential

parent and legal custodian "[s]o [they] would have a better visitation schedule." (*Id.* at 120).

**{¶30}** Consequently, based on our review of the record before this court, it is evident that the trial court's magistrate and the trial court considered the GAL's report, as well as the testimony and evidence presented at the January 18, 2024 hearing, and weighed that evidence with the R.C. 3109.04 factors. Importantly, while the trial court placed greater emphasis on certain factors under R.C. 3109.04(F)(1)—namely the factors relating to Eufracio's relocation to Texas and the children's support system in Ohio—it was permitted to do so. *See Krill*, 2014-Ohio-2577, at ¶ 63 (3d Dist.). Indeed, "[n]o one factor of R.C. 3109.04(F)(1) is dispositive of the child's best interest, and the court has discretion to weigh the factors 'as it sees fit.'" *B.S.*, 2021-Ohio-176, at ¶ 42 (5th Dist.), quoting *Leach v. Leach*, 2020-Ohio-1181, ¶ 9 (12th Dist.). That is, "[i]t is in fact well established that it is not this court's role to determine the relative weight to assign to each factor when determining what is in a child's best interest." *Reisinger v. Topping*, 2021-Ohio-2545, ¶ 28 (12th Dist.).

**{¶31}** Therefore, "[t]his court should not, and will not, second-guess the [trial] court's decision as to the appropriate weight to be given to any one of those best interest factors." *Bonifield v. Bonifield*, 2021-Ohio-95, ¶ 13 (12th Dist.). Thus, notwithstanding Eufracio's challenge to the trial court's weight applied to the

factors under R.C. 3109.04(F)(1), the trial court satisfied the statutory requirements when allocating Eufracio and Cornwell's parental rights and responsibilities.

{¶32} In sum, where most of the relevant factors did not tilt strongly in favor of either party, we cannot say that it was unreasonable, arbitrary, or unconscionable for the trial court's magistrate or the trial court to conclude that it was in Al.C. and Am.C.'s best interest for Cornwell to have residential and legal custody of Al.C. and Am.C. *See In re A.B.*, 2010-Ohio-2823, ¶ 35 (12th Dist.) (concluding that "the trial court's custody decision is supported by the record, and we decline to second guess the trial court in this matter"). Therefore, we conclude that the trial court did not abuse its discretion by designating Cornwell as the residential parent and legal custodian of the parties' children.

{¶33} Eufracio's assignments of error are overruled.

{¶34} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**WALDICK and MILLER, J.J., concur.**

**/hls**