[Cite as *Lee v. Capalungan*, 2024-Ohio-4758.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Emmanuel R. Lee, | : | |
| Plaintiff-Appellant, | : | No. 23AP-724 |
| | | (C.P.C. No. 17JU-8636) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Goldi Y. Capalungan, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on September 30, 2024

**On brief:** *Gregg R. Lewis*, for appellant. **Argued:** *Gregg R. Lewis*.

**On brief:** *Gary J. Gottfried Co LPA*, and *Gary J. Gottfried*, for appellee. **Argued:** *Gary J. Gottfried*.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch

LUPER SCHUSTER, J.

{¶ 1}  Plaintiff-appellant, Emmanuel R. Lee ("father"), appeals from a decision and judgment entry of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, awarding parenting time in Australia to defendant-appellee, Goldi Y. Capalungan ("mother"), and ordering the party receiving the child to bear the financial costs of transportation of the child between Australia and the United States. For the following reasons, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2}  Father and Mother are the parents of a minor child, E.Z.L., born August 31, 2012.  On July 6, 2017, father filed a complaint for shared parenting of the child, and the

parties subsequently entered into an agreed entry which approved and adopted the parties' shared parenting plan, designating father the residential parent for school placement purposes. In the agreed entry, the parties agreed to informal parenting time for mother to be arranged by the parties at least twice a year as mother lives in Australia.

{¶ 3} On March 13, 2018, mother filed a motion to modify or terminate shared parenting and a motion for temporary orders. Mother then withdrew this motion on April 4, 2018 in order to proceed with a Hague Convention action in the United States District Court, Southern District of Ohio that was ultimately unsuccessful. Subsequently, mother filed a second motion to modify or terminate shared parenting on November 27, 2019. Father filed his own motion to modify parental rights and responsibilities by terminating the parties' shared parenting plan.

{¶ 4} On May 20, 2020, the magistrate issued a temporary order granting mother summer parenting time in Australia from the beginning of June through the beginning of August with some flexibility depending on flight schedules. The temporary order designated mother to pay for the initial cost of the child's flight to and from Australia and ordered father to reimburse half the cost. Additionally, the temporary order ordered father to pay any hotel accommodations necessary during the transfer of the child to and from Australia and ordered mother to reimburse half the cost within 30 days. Father filed a motion to stay the execution of the magistrate's temporary order on May 29, 2020, and the trial court denied the motion.

{¶ 5} The magistrate then conducted a trial on the parties' motions beginning October 28, 2020. The evidence at trial indicated the child was born in the Philippines in 2012 and that mother and father were never married. In January 2016, mother moved with the child to Australia so mother could pursue an employment opportunity while father relocated to the United States, where he still resides and was granted citizenship. In 2017, mother brought the child to the United States to live with father while she completed training for her career. Father enrolled the child in school and the child remained in father's care when mother returned to Australia.

{¶ 6} The parties presented different accounts of their plans for the child's residency after mother completed her career training. Father testified the parties always intended to live in the United States and agreed the child would remain in the United States

to obtain his citizenship and go to school. Mother, on the other hand, testified the parties both knew the child's location in the United States was intended to be temporary and that the child was supposed to return to Australia to live with mother. Mother testified she sought the return of the child after she completed her career training in January 2018 but that father suggested the child remain in the United States long enough to obtain his United States citizenship and passport. In 2018, the child received his United States passport and his certificate of naturalization as a United States citizen. Mother testified that she requested father return the child to Australia again once the child had obtained his United States citizenship, but that father refused.

{¶ 7} Mother further testified it was father's refusal to return the child that led to mother pursuing her Hague Convention on the International Aspects of Child Abduction action in federal court on October 23, 2018. In a 2019 opinion and order, the federal court determined that father had acted deceptively after having initially agreed to return the child to Australia. Despite finding father had "manufactured a favorable status quo that he will undoubtedly rely on in any future custody proceedings," the federal court did not order the child to be returned to Australia because the child had become acclimated to his life in Ohio. (July 15, 2019 Opinion & Order at 7.)

{¶ 8} The child has lived in the United States with father since February 2017, and mother has only visited the child in person one time since then, visiting him between December 2017 and January 2018. Mother refuses to come to the United States again and seeks only to have the child join her in Australia. Mother has maintained contact with the child through phone calls and video calls. Additionally, father has paid for all expenses related to the child's care since 2017 when the child came to live with him. Mother does not pay child support.

{¶ 9} On January 12, 2023, the magistrate issued a decision denying mother's motion to terminate shared parenting and granting, in part, father's motion to modify parental rights and responsibilities. The magistrate ordered mother to receive parenting time in Australia every spring break of the child's school year, half of every winter break of the child's school year, and four weeks in the first half of the summer months depending on flight schedules. Additionally, the magistrate made the following orders regarding the transfer of child between countries:

b. The party receiving the child shall fly to the [Country] and retrieve the child and fly back to his/her home Country for his/her parenting time. In other words, at the beginning of Mother's parenting time, she shall arrange the transportation of the minor child and inform Father immediately of same. Mother (or a third party who is agreed upon by BOTH parties) shall accompany the child on the flight from the United States to Australia for Mother's parenting time. Mother shall pay the cost of her and the child's flights to Australia. An immediate return flight for the accompanying adult is acceptable. If hotel accommodations are necessary as a result of flight schedules, those costs shall be paid for by the parent staying in the hotel.

c. At the end of Mother's parenting time, Father (or a third party who is agreed upon by BOTH parties) shall arrange transportation and inform Mother immediately of same. An immediate return flight for the accompanying adult is acceptable. If hotel accommodations are necessary as a result of flight schedules, those costs shall be paid for by the parent staying in the hotel. Father shall pay for his flight to Australia to retrieve the child and for the child's return flight back to the United States.

(Jan. 12, 2023 Mag.'s Decision at 11-12.)

{¶ 10} Both mother and father filed objections to the magistrate's decision. In a November 21, 2023 decision and judgment entry, the trial court overruled both mother's and father's objections, finding it was in the best interest of the child to have some parenting time with mother in Australia. Thus, the trial court approved and adopted the magistrate's January 12, 2023 decision. In adopting the magistrate's decision, the trial court made the additional order that "Mother has the option to request that her Spring break parenting time be moved to summer parenting time," and "must convey this request in writing to Father at least 30 days prior to the start of Spring break." (Nov. 21, 2023 Decision & Jgmt. Entry at 18.) Father timely appeals.

## II. Assignments of Error

{¶ 11} Father assigns the following two assignments of error for our review:

I. The court abused its discretion by granting parenting time to defendant appellee in Australia.

II. The court abused its discretion when it ordered plaintiff appellant to pay for the cost of travel and hotel accommodations associated with defendant appellee's parenting time.

### III. First Assignment of Error – Parenting Time

{¶ 12} In his first assignment of error, father argues the trial court abused its discretion in awarding parenting time to mother in Australia.

{¶ 13} R.C. 3109.04 governs the allocation of parental rights and responsibilities for the care of children. A determination of parental rights and responsibilities under R.C. 3109.04 is left to the sound discretion of the trial court. *Reese v. Reese*, 10th Dist. No. 22AP-309, 2023-Ohio-360, ¶ 8, quoting *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988) (" '[t]he discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned' "). We review the trial court's allocation of parental rights and responsibilities for an abuse of discretion. *Id.*, citing *Pallone v. Pallone*, 10th Dist. No. 17AP-409, 2017-Ohio-9324, ¶ 10. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 173 Ohio St.3d 191, 2023-Ohio-1823, ¶ 27.

{¶ 14} Both mother and father sought to modify the existing shared parenting plan. Under R.C. 3109.04(E)(2)(b), the trial court may modify the terms of the plan for shared parenting upon the request of one or both parents only where the modification is in the best interest of the child. *See Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 27 (R.C. 3109.04(E)(2)(b) allows for the modification of the terms of a shared parenting plan).

{¶ 15} Father argues the trial court abused its discretion in allocating parenting time because requiring the child to travel to Australia for mother to exercise her parenting time is not in the best interest of the child. In determining the best interest of the child, a trial court must consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 3109.04(F):

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and

concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any members of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a) through (j).

{¶ 16} Additionally, R.C. 3109.051(D) enumerates additional factors the trial court must consider when determining parenting time:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and the community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent or companionship or visitation by the grandparent, relative, or other person who requested companionship or visitation, as to a specific parenting time or visitation schedule, or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(12) In relation to requested companionship or visitation by a person other than a parent, whether the person previously has been convicted of pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the person, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and

willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) In relation to a requested companionship or visitation by a person other than a parent, the wishes and concerns of the child's parents, as expressed by them to the court;

(16) Any other factor in the best interest of the child.

R.C. 3109.051(D)(1) through (16).

{¶ 17} In its November 21, 2023 decision and judgment entry, the trial court listed the statutory factors in both R.C. 3109.04(F)(1) and 3109.051(D) and the evidence related to each factor, and it stated it was incorporating the magistrate's findings related to each factor. The trial court, through adoption of the magistrate's decision, noted the challenging nature of the relationship between the parties. Both mother and father represented they do not wish to withhold the child from the other parent but neither one trusts the other to facilitate parenting time with the other.

{¶ 18} As the magistrate noted, the lack of structure in the parties' initial shared parenting agreement likely contributed to the continued challenge between the parties in accommodating one another or in coming to joint decisions in parenting the child. The history between the parties reflects ongoing efforts, often contentious, for each parent to exercise parenting time in the manner they see fit. The magistrate additionally noted both parties have acted unreasonably at different times throughout the many years this dispute has persisted, and implementing some structure around the child's school schedule wherein each parent is able to exercise parenting time in their own country of residence emerged as something of a compromise.

{¶ 19} Father does not argue the trial court failed to consider any of the factors listed in R.C. 3109.04(F)(1) or 3109.051(D). Instead, father argues, more generally, that the trial court's order is unreasonable and unconscionable because the child has not been to Australia since he was four years old, and the child is now fully immersed in his life in the United States. Though father argues the child should not be forced to spend time in another country, neither party asked for the trial court to conduct an in-camera interview with the

child or to have a guardian ad litem appointed to help ascertain the child's wishes. The trial court considered and weighed both father's and mother's arguments and the evidence presented when it determined allowing mother to exercise her parenting time in Australia would be in the best interest of the child. Father essentially challenges the weight the trial court afforded to individual factors when determining the best interest of the child. However, it is for the trial court to consider and weigh the evidence presented at the hearing and determine the appropriate weight to afford each factor. *Lumley v. Lumley*, 10th Dist. No. 09AP-556, 2009-Ohio-6992, ¶ 46 (in a determination under R.C. 3109.04, "assessment of the credibility and weight of the evidence is reserved for the trial court"), citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997). *See also Cornwell v. Eufracio*, 3d Dist. No. 13-24-17, 2024-Ohio-4634, ¶ 30 (" '[n]o one factor of R.C. 3109.04(F)(1) is dispositive of the child's best interest, and the court has discretion to weigh the factors "as it sees fit" ' "), quoting *B.S. v. M.M.*, 5th Dist. No. 2020 CA 00111, 2021-Ohio-176, ¶ 42, quoting *Leach v. Leach*, 12th Dist. No. CA2019-06-092, 2020-Ohio-1181, ¶ 9. It is also worth noting the trial court disagreed with mother that she should be made the residential parent for school placement purposes, undercutting father's position that the trial court gave undue weight to mother's wishes over his.

{¶ 20} The trial court considered the long history of this matter, the evidence presented at the hearing, and the desires of both parents to exercise parenting time with the child. The trial court determined it was in the best interest of the child for the child to remain with father for school placement purposes but for the child to spend time with mother in Australia to foster the bond between mother and the child. Without an in-camera interview of the child or the representations of a guardian ad litem regarding the child's wishes, there is nothing in the record to indicate the child does not want to spend some time in Australia with mother. For these reasons, we cannot say the trial court abused its discretion in determining it is in the best interest of the child to spend some time with each parent in their country of residence. We overrule father's first assignment of error.

## IV. Second Assignment of Error – Cost of Travel

{¶ 21} In his second assignment of error, father argues the trial court abused its discretion when it ordered father to pay for the cost of travel and hotel accommodations

associated with the exercise of mother's parenting time in Australia. As noted in our resolution of father's first assignment of error, we review a trial court's determination of parental rights and responsibilities under R.C. 3109.04 for an abuse of discretion. *Reese* at ¶ 8.

{¶ 22} We agree with father that requiring him to pay for the cost of travel and hotel accommodations associated with the exercise of mother's parenting time in Australia is unreasonable. The trial court determined the parties have similar incomes. Additionally, the trial court noted mother has been resolute in her refusal to travel to the United States and has foregone years of visitation with the child because of her position. Father is the residential parent and bears the entirety of the child's everyday living expenses. Father has also been consistent that he would agree to parenting time for mother in the United States, but mother has consistently refused to spend any time in the United States where the child resides. Because it is mother who is adamant that her parenting time shall only occur in Australia, and because there is no dispute father bears all other financial responsibility associated with raising the child, we find it is unreasonable to require father to be additionally financially responsible for the considerable expense of multiple international trips per year to accommodate mother's parenting time.

{¶ 23} We recognize the difficulty this case presents given the years of contentiousness between the parties, the conduct of both parties throughout the course of the child's life, and the desire of both parents to have meaningful parenting time with the child. As we noted in our resolution of father's first assignment of error, allowing mother to exercise her parenting time in Australia while maintaining father as the residential parent for school placement is a compromise that attempts to bring structure to the parties' agreement for shared parenting. However, because father bears sole responsibility for all of the child's daily living expenses, it is unreasonable and an abuse of discretion to require father to pay for the cost of flights and hotel accommodations associated with mother's exercise of her parenting time. The trial court should have ordered mother to be solely responsible for the cost of transporting the child to and from the United States and Australia, including the travel expenses of the accompanying chaperone for the child.

{¶ 24} Because the trial court abused its discretion in requiring father to pay for the cost of flights and hotels associated with mother exercising her parenting time in Australia, we sustain father's second assignment of error.

## V. Disposition

{¶ 25} Based on the foregoing reasons, the trial court did not abuse its discretion in awarding parenting time in Australia to mother. However, the trial court abused its discretion in ordering father to be responsible for any of the cost of transportation of the child and the accompanying chaperone to and from the United States and Australia. Having overruled father's first assignment of error but having sustained father's second assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, and we remand the matter to that court for further proceedings consistent with this decision.

*Judgment affirmed in part and reversed in part*;
*cause remanded.*

JAMISON and EDELSTEIN, JJ., concur.

_____